**SCHOOL SERVICE EMPLOYEES LOCAL NO. 284, EDEN PRAIRIE, MINNESOTA, Respondent,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 270, HOPKINS, MINNESOTA, Relator.**

**No. C1-92-1485.**

Court of Appeals of Minnesota.

May 4, 1993.

Hubert H. Humphrey, III, Atty. Gen., Erica Jacobson, Sp. Asst. Atty. Gen., St. Paul, Christopher M. Brown, Eden Prairie, for respondent.

J. Dennis O'Brien, Eric J. Magnuson, Amy K. Adams, Rider, Bennett, Egan & Arundel, Minneapolis, for relator.

Considered and decided by ANDERSON, C.J., and DAVIES, and AMUNDSON, JJ.

## OPINION

DAVIES, Judge.

Appellant school district challenges the decision to accrete 60 instructional assistants to the district's paraprofessional bargaining unit. We affirm.

## FACTS

In 1991 the Hopkins School District designed an experimental program to use 60 "instructional assistants" to help classroom teachers in kindergarten through second grade. Unlike existing paraprofessionals, who do not perform instructional tasks and must meet only limited educational requirements, these instructional assistants are intended to perform instructional tasks independently and are required to have some education and background in teaching. The position, because experimental, is to evolve over time.

In June 1991, before the instructional assistants had been hired, School Service Employees Local 284, the bargaining unit representing all paraprofessionals in the district, filed a petition to accrete instructional assistants to it. The district opposed the accretion, contending that teachers would oppose the program if instructional assistants were included in the same unit as paraprofessionals.

The Bureau of Mediation Services ("BMS") held a hearing on the petition in August 1991. Although the program was not yet underway, a number of witnesses testified about the instructional assistants' duties and about the district's expectations for the program. In October, the BMS commissioner issued an order accreting the instructional assistants to the paraprofessional unit, finding a community of interest between the groups.

On appeal to the Advisory Task Force for the Commissioner of Administration

("the task force"), the district moved for remand to the BMS for the taking of additional evidence. The district argued that, because the program was now functioning, witnesses could testify more accurately about the instructional assistants' duties and that such testimony would show the error in assigning instructional assistants to the paraprofessional unit. The task force granted the motion. On remand, although the district was prepared to offer six witnesses, the BMS limited testimony to the two individuals specifically identified in the district's motion.

Following the remand hearing, the task force again reviewed—and affirmed—the BMS commissioner's decision to accrete the instructional assistants to the paraprofessional unit. The district petitioned for a writ of certiorari.

## ISSUES

I. Did the Bureau of Mediation Services err on remand by limiting the evidence received to that specifically described in the district's motion for remand?

II. Should the instructional assistants have the opportunity to vote on representation?

III. Did the task force err in assigning instructional assistants to the paraprofessional bargaining unit?

## ANALYSIS

### I. Testimony

At the remand hearing, the BMS hearing examiner refused to allow testimony other than that of the two individuals identified in the district's motion. The district now contends that this limitation was beyond the authority of the BMS in light of the task force's order, and that it was prejudicial.

The district's motion to the task force regarding the witnesses and their expected testimony was detailed and specific. It contained no language reserving the possibility that the district would submit evidence beyond the testimony of the two witnesses described. The task force's re-

sponse was general and simply granted the motion. We cannot say, therefore, that the task force intended to compel the testimony of more witnesses than requested. The BMS was within its authority in limiting the testimony on remand.

In any case, the additional testimony offered by the district appears to be unnecessary to the decision. Most of the offered testimony pertained to the instructional assistants' role and the difference between instructional assistants and other paraprofessionals. The differences between the two groups had already been testified to at great length. The ultimate decision was based on the basic similarities in the working conditions between the instructional assistants and other paraprofessionals. Thus, even if the BMS had erred in limiting the evidence, the error was not prejudicial.

## II. Election

When it is proposed that employees be accreted to a bargaining unit, the Public Employment Labor Relations Act ("PELRA") does not grant them an election on their preferred bargaining unit. *County of Scott v. Public Employment Relations Bd.*, 461 N.W.2d 503, 506 (Minn.App. 1990), *pet. for rev. denied* (Minn. Dec. 20, 1990). The Act includes a statement of general policy that employees are free to choose their own bargaining representative, Minn.Stat. § 179A.01(1) (1990), but the employee advice is only one factor among many to be considered. *See* Minn.Stat. § 179A.09, subd. 1 (1990). Therefore, the task force did not err in refusing to delay its decision until the instructional assistants were hired and voted.

## III. Accretion to Unit

The task force's decision to accrete employees to a bargaining unit is presumed to be correct. *Scott County*, 461 N.W.2d at 504. On review, this court must defer to an agency's expertise and knowledge in its particular field. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977). The task force's decision will be reversed only if it reflects an error of law, is arbitrary and capricious, or its findings are unsupported by substantial evidence. *Scott County*, 461 N.W.2d at 504.

Under Minn.Stat. § 179A.09, subd. 1, the criteria to be considered in determining the appropriate bargaining unit for a group of employees are

the principles and the coverage of uniform comprehensive position classification and compensation plans of the employees, professions and skilled crafts, and other occupational classifications, relevant administrative and supervisory levels of authority, geographical location, history, extent of organization, the recommendation of the parties, and other relevant factors. The commissioner shall place particular importance upon the history and extent of organization, and the desires of the petitioning employee representatives.

The district contends that the task force erroneously interpreted the statute as requiring it to determine "an" appropriate unit for the instructional assistants, not "the" appropriate unit. It contends that if the task force had determined "the" appropriate unit, it would have given significant weight to the "educational effect" of assigning the instructional assistants to the paraprofessional unit. Even if the statute required the task force to determine "the" appropriate unit, the task force would still be obligated to follow the statutory directive in section 179A.09 in making its decision.

Although the statute is designed to take public interest factors into account, *see* Minn.Stat. § 179A.01, specific provisions of a statute should control over the general. *See City of St. Paul v. Hall*, 239 Minn. 378, 381, 58 N.W.2d 761, 763 (1953). While "educational effect" may be considered as a "relevant factor," there is no indication that it should control over other statutory factors. *See* Minn.Stat. § 179A.09. The district contends that the task force erred in failing to place *any* weight on the "educational effect" of the unit assignment. Although the statute allowed the task force to consider the edu-

cational effect of the program as a "relevant factor," the record does not conclusively indicate what the educational effect of the unit assignment would be.

■ The district next contends that the instructional assistants and paraprofessionals have an insufficient community of interest to support accretion to the unit. The task force determined, however, that the lack of licensure for this group of employees, the location of work, and the common work conditions constitute a community of interest. It further concluded that the existing bargaining unit structure favors this combination. The task force also relied on the union's desire to accrete the instructional assistants into the paraprofessional unit, recognizing the statutory mandate to "place particular importance upon * * * the desires of the petitioning employee representatives." *See* Minn.Stat. § 179A.09, subd. 1.

We conclude that the task force considered the appropriate statutory factors. Although instructional assistants are required to have more education and are to be given more responsibility, those factors alone do not determine the nature of the employment relationship. The paraprofessionals included in the unit already have varied qualifications and duties. For instance, classroom paraprofessionals do not perform the same tasks as computer paraprofessionals, and playground paraprofessionals do not perform the same tasks as science center resource paraprofessionals. And at this point, almost all aspects of the instructional assistants' employment relationship mirror the employment relationship of the paraprofessionals.

Finally, the BMS, under its precedents, allows an employee group to separate from the larger bargaining unit if the group shows a significant change in the community of interest of involved employees. *In re Todd County Professional Unit and Todd County Bd. of Comm'rs*, BMS Case No. 92–PCE–381 (Jan. 3, 1992). Thus, if the instructional assistants' position evolves over time so a change in community of interest occurs (for instance, if licensure is eventually required), consideration can be given to separating the assistants from the larger bargaining unit. This is particularly so because no long-standing historical relationship ties them inexorably to this bargaining unit. In light of the circumstances of the program at the time of the accretion petition—especially its experimental nature and that there were no members of the instructional assistant class when the petition was filed—the BMS should be more receptive to a future petition for separation than if the situation been more fully defined when the decision now under review was made.

In light of the standard of review, we cannot say the task force erred in assigning the instructional assistants to the paraprofessional unit. Although the district may be justifiably concerned about the success of an experimental program and may want to maintain its flexibility, that concern cannot be elevated above the considerations underlying PELRA.

**DECISION**

Limiting the district's testimony on remand to that specifically requested was not error. The instructional assistants are not entitled to an election to determine unit representation. The task force did not err in assigning the instructional assistants to the existing paraprofessional bargaining unit.

**Affirmed.**