**In the Matter of a PETITION FOR CLARIFICATION OF AN APPROPRIATE UNIT.**

No. C0-94-2244.

Court of Appeals of Minnesota.

April 11, 1995.

Review Denied June 14, 1995.

---

Eric J. Magnuson, J. Dennis O'Brien, Karen A. Janisch, Rider, Bennett, Egan & Arundel, Minneapolis, for relator Independent School Dist. No. 270.

Christopher M. Brown, Eden Prairie, for respondent School Service Employees Local 284.

Mary Rose Wattson, Eden Prairie, for respondent Hopkins Educ. Ass'n.

Hubert H. Humphrey, III, Minn. Atty. Gen., Peter E. Obermeyer, Com'r, Bureau of Mediation Services, St. Paul, for Bureau of Mediation Services.

Considered and decided by NORTON, P.J., SCHUMACHER and MANSUR,* JJ.

## OPINION

MARTIN J. MANSUR, Judge.

Appellant school district challenges a Bureau of Mediation Services order determining that learning and development resource teachers were not "teachers" within the meaning of the Public Employment Labor Relations Act, and thus could not be included in the teachers' bargaining unit. We reverse.

## FACTS

In 1991, the Hopkins school district created a two-year pilot program to use approximately 60 "instructional assistants" to assist classroom teachers in the instruction of elementary students. Although the district required some background in teaching, it did not require instructional assistants to be licensed by the board of teaching.

Before the instructional assistants were hired, School Service Employees Local 284 (Local 284) filed a petition with the Bureau of Mediation Services (Bureau) to have the instructional assistants included within the paraprofessional bargaining unit, which it represents. Both the school district and the teachers, represented by the Hopkins Education Association (HEA), opposed the inclusion of the instructional assistants in the paraprofessional bargaining unit.

After a hearing, the Bureau ordered that instructional assistants be included in the paraprofessional unit because of a community of interest between the groups. This court upheld that decision in *School Serv. Employees Local No. 284 v. Independent Sch. Dist. No. 270*, but noted that a different conclusion might be appropriate in the future if, for example, licensure was eventually required for instructional assistants. 499 N.W.2d 828, 832 (Minn.App.1993). In 1993, the legislature enacted Minn.Stat. § 124A.225, which requires school districts to use a portion of

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

their revenue to reduce instructor-to-learner ratios in grades kindergarten through six. *Id.*, subd. 4. The statute requires that the additional instruction be provided by or under the supervision of a "primary instructor," which is defined as a public employee licensed by the board of teaching. *Id.*, subds. 2, 3.

In response to this legislation, the Hopkins school district's board of education eliminated the instructional assistant positions and created a new licensed position meeting the legislation's definition of primary instructor. The new positions were entitled "Learning and Development Resource Teachers" (LDRT).

The school district and the HEA jointly petitioned the Bureau to clarify that employees in the LDRT position were appropriate members of the teachers' bargaining unit. After a hearing, the Bureau issued an order finding that the LDRTs were not "teachers" as defined by the Public Employment Labor Relations Act (PELRA) and thus that they could not be included in the teachers' bargaining unit. The school district petitioned for a writ of certiorari.

### ISSUE

Did the Bureau of Mediation Services err in concluding that learning and development resource teachers are not "teachers" within the meaning of the Public Employment Labor Relations Act?

### ANALYSIS

■ Agency decisions enjoy a presumption of correctness, but reviewing courts are not bound by an agency's interpretation of a statute. *In re Rochester Express Limousine Serv.*, 508 N.W.2d 788, 789 (Minn.App.1993). The construction of a statute such as PELRA is a question of law. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). As such, the decision of an administrative agency is fully reviewable by this court. *Id.*

■ Under PELRA, employees falling within the definition of "teacher" must be placed in the teachers' bargaining unit.

Minn.Stat. § 179A.03, subd. 2 (1994). PELRA defines "teacher" as

any public employee other than a superintendent or assistant superintendent, principal, assistant principal, or a supervisory or confidential employee, employed by a school district: (1) *in a position for which the person must be licensed by the board of teaching or the state board of education;* or (2) in a position as a physical therapist or an occupational therapist.

*Id.*, subd. 18 (emphasis added). The Bureau concluded that because neither the board of teaching nor the state board of education required LDRTs to be licensed, they were not "teachers" within the meaning of PELRA.

■ The Bureau's interpretation of PELRA's definition of teacher goes beyond the plain language of the statute. A person is a "teacher" under subdivision 18 if they hold a position which requires licensure by the board of teaching or the state board of education. *Id.* Subdivision 18 does *not*, however, specify that it must be the board of teaching or the state board of education imposing the licensure requirement. If the legislature had intended to impose this additional requirement, it could easily have defined teacher as a person in a position "for which the board of teaching or the state board of education require licensure."

■ "When the words in a statute are clear and unambiguous, a court must give effect to the plain meaning of the language." *Ullom v. Independent Sch. Dist. No. 112,* 515 N.W.2d 615, 617 (Minn.App.1994). Courts are prohibited from adding words to a statute. *Id.* Here, the school district requires that LDRTs be licensed by the board of teaching or the state board of education. Thus, under the plain language of the statute, persons who are licensed and hold the position of LDRT fall within the definition of teacher because they hold a position "for which the person must be licensed by the board of teaching or the state board of education." Minn.Stat. § 179A.03, subd. 2.

Moreover, in addition to the school board's licensure requirement, recently enacted legislation also requires that LDRTs be li-

censed. Section 124A.225 of the General Education Revenue statute, enacted in 1993, requires school districts to set aside revenue in a special account to reduce instructor-to-learner ratios in elementary grades. Minn. Stat. § 124A.225, subds. 1, 4 (1994). The additional instruction required to reduce ratios must be provided·by or under the supervision of a "primary instructor," who is defined as a person "licensed by the board of teaching." *Id.*, subds. 2, 3. The legislation therefore not only requires the creation of LDRT-type positions, but it essentially imposes a licensure requirement because it mandates that school districts reduce student-teacher ratios and, if they want to access the funds they are required to set aside for this purpose, that they do so with persons licensed by the board of teaching. Accordingly, because licensure is required for their position, LDRTs fall within PELRA's definition of teacher.

Our interpretation of PELRA's definition of teacher is consistent with the supreme court's analysis in *Hibbing.* In that case, the teachers' union sought to have eight Title I paraprofessionals included in the teachers' bargaining unit, arguing that their job functions were those traditionally performed by teachers. 369 N.W.2d at 528–30. The supreme court held that the Title I paraprofessionals did not fall within PELRA's definition of teacher because they were not required to be licensed. *Id.* at 529. In so holding, the court relied in part on the fact that neither the Title I program nor the Hibbing school district required licensure for the positions. *Id.* at 529. Here, in contrast, both the school district and the legislation mandating the creation of the position the LDRTs fillLDRT position require licensure. Thus, unlike the Title I paraprofessional in *Hibbing,* LDRTs fall within PELRA's definition of teacher.

Respondent Local 284 asserts that our interpretation of PELRA's definition of teacher allows school districts to dictate the composition of bargaining units by simply imposing a licensure requirement for those it wishes to funnel into the teachers' bargaining unit. We cannot ignore the plain language of PELRA's definition of teacher, however, because of the unlikely possibility that a school district will impose licensure requirements on all its employees to get them into one bargaining unit. *See id.* at 530 (refusing to require consideration of job functions in bargaining unit determinations, even though failing to do so might allow employer to define bargaining units). Moreover, we note there is no evidence to indicate that the Hopkins school district created the LDRT position and imposed the licensure requirement to manipulate bargaining units. Rather, the record suggests that its primary motivation was to comply with the recently enacted funding legislation.

We also reject Local 284's contention that the recent funding legislation has no impact on bargaining unit determinations because it does not require that persons paid from the reserved funds be members of the teachers' bargaining unit. While the legislation may not expressly require membership in the teachers' bargaining unit, it does require licensure by the board of teaching. This is all that is needed to bring LDRTs within PELRA's definition of teacher and thus into the teachers' bargaining unit. *See* Minn.Stat. § 179A.03, subds. 2, 18.

## DECISION

The Bureau erred in concluding that LDRTs who are licensed did not fall within PELRA's definition of teacher and that they therefore could not be members of the teachers' bargaining unit.

**Reversed.**